## APPEAL OF McMILLAN METAL CO.

Docket No. 3841. Submitted July 8, 1925. Decided October 5, 1925.

Reasonableness of salaries determined.

*C. W. Saussy, C. P. A.*, for the taxpayer.
*Blount Ralls, Esq.*, for the Commissioner.

Before STERNHAGEN, GREEN, and LOVE.

The taxpayer appealed from the determination of a deficiency in income and profits taxes of $11,778.04 for the year 1920. The deficiency arises from the disallowance by the Commissioner, as a deduction from gross income, of the sum of $29,885, a part of the amount paid to officers as salaries.

### FINDINGS OF FACT.

The taxpayer is a corporation of the State of Georgia, with its principal office at Savannah. It was incorporated in 1916 and took over the business theretofore conducted by McMillan Bros., a co-partnership, and McMillan Bros. Co. of Mobile, an Alabama corporation.

In 1920 the officers were Thomas H. McMillan, chairman of the board of directors; D. B. McMillan, president; Thomas H. McMillan, Jr., vice president; and R. H. McMillan, secretary and treasurer. The last three are sons of T. H. McMillan.

The taxpayer was in the business of manufacturing and repairing copper turpentine stills, which were used principally in connection with naval stores. The business was started by T. H. McMillan and a brother in 1880, at Fayetteville, N. C. As the turpentine industry developed the business was extended throughout the turpentine belt, and branch offices were opened in Georgia, Alabama, and Florida. The sons of T. H. McMillan entered the business of their father 20 or 25 years ago, and were trained and grew up in the business during the intervening years. They became familiar with the turpentine trade and the naval stores trade and learned the technical processes of the coppersmith business. Each one of the officers was manager and in charge of a branch office and plant—T. H. McMillan at Savannah, Ga.; D. B. McMillan at Pensacola, Fla.; T. H. McMillan, Jr., at Jacksonville, Fla., and R. H. McMillan at Mobile, Ala. The taxpayer, through its officers, controls about 75 per cent of the coppersmith business in the turpentine belt, and makes about 75 per cent of the turpentine stills.

On March 15, 1916, T. H. McMillan, Sr., made a contract with the corporation, the material part of which follows:

I will give to the management of the affairs of the company my undivided time and influence, with the understanding that I receive no stated salary, upon condition that I be allowed to use for my maintenance, that is to say, for my support and other expenses including traveling expenses, from the earnings of the company, in an amount not to exceed $12,000 per year * * * this agreement to be ·in force for a period of 12 months from date and for such further term as may be agreeable to both parties.

In 1918 each officer drew $2,400; in 1919, $4,000. In 1916, 1917, and 1918, turpentine operations were almost at a standstill, and the gross sales in each of those years amounted to about $75,000. Prior to 1916 they averaged around $150,000 a year. In 1919 the gross sales were about $140,000; in 1920 they were $301,609.34. The naval stores business commences in the month of November for the succeeding year. The officers were therefore able to judge by the month of January approximately what the ensuing year's business would be.

On January 16, 1920, the board of directors held a meeting and fixed salaries for 1920 as follows:

|  | Per month. |
|---|---|
| T. H. McMillan | $1,500 |
| D. B. McMillan | 1,200 |
| T. H. McMillan, Jr | 1,200 |
| R. H. McMillan | 1,200 |

The board of directors also passed a resolution providing for an additional payment to each officer of 10 per cent of the net profits of the company. The four officers were also directors and constituted the board of directors.

The amount of the compensation paid in the taxable year was as follows:

| T. H. McMillan | $9,000 |
|---|---|
| D. B. McMillan | 16,485 |
| T. H. McMillan, Jr | 17,200 |
| R. H. McMillan | 17,200 |

The amount of salary allowed by the Commissioner for each officer was $7,500.

In 1920, and at all times prior thereto from the date of incorporation, the taxpayer had outstanding $7,500 of capital stock, consisting of 75 shares of the par value of $100 each. The stock of the corporation was all held by members of the McMillan family and their wives. On January 26, 1920, the shares were pooled and redistributed as shown below:

| Name of shareholder. | Number of shares held prior to January, 1920. | Number of shares received in January, 1920. |
|---|---|---|
| Mary F. McMillan (wife of T. H. McMillan) | 45 | 37 |
| T. H. McMillan | | 2 |
| Maude McMillan (wife of R. H. McMillan) | 23 | 11 |
| R. H. McMillan | 2 | 1 |
| T. H. McMillan, Jr | 3 | 12 |
| D. B. McMillan | | 12 |
| R. E. Stillman (attorney) | 2 | |
| Total | 75 | 75 |

No consideration was paid or received by any shareholder in the pooling and redistribution. The purpose was to give the sons a larger interest in the corporation.

At the meeting of January 26, 1920, a dividend of 30 per cent was declared, which was paid on the shares of stock as redistributed on that date. The net income returned by the taxpayer for 1920 was $4,584.

We find that the amount of salary actually paid to T. H. McMillan of $9,000 was reasonable and that a reasonable allowance for salary for each of the other officers is $8,000.

### DECISION.

The deficiency determined by the Commissioner is disallowed in part. The deficiency should be computed in accordance with the foregoing findings of fact and will be settled on consent or on 10 days' notice, under Rule 50.

### OPINION.

STERNHAGEN: The taxpayer contends that the amounts paid to the officers were reasonable and that the Commissioner erred in disallowing the amounts in excess of $7,500 each to the four officers. The outstanding fact which gives rise to the controversy is that the salaried officers are the directors and, with their wives, all the stockholders. The business is, as they say, " a family affair." The profits could be given to them as salary or as dividends, and the only difference would have been in the effect on the corporation and individual income taxes. Under such circumstances the salaries may properly be carefully scrutinized to determine whether the deduction is a reasonable allowance for salaries or excessive and in effect a distribution of profits.

These persons met in January, 1920, as corporate directors. At that time they were in position to approximate the profits of the forthcoming year. Knowing that the sales would be greatly in excess of

any preceding year, they voted to increase their own salaries by more than three times the figures of 1919, except the father, whose increase was to be not so great. The ground for this is stated in general terms to be that the officers were responsible for the business, had taken inadequate salaries in the past, wanted to participate in the fruits of a fortunate year, and had therefore demanded more money from their father. They asserted they could get more money elsewhere or by starting new businesses each for himself. We have, however, no evidence of the amounts demanded.

Looking alone to the corporation and its interests and probable conduct as an independent business organization, the directors of which were required to represent the stockholders, we can not believe that the directors would have reasonably granted such salaries to the officers and left only $4,584 as the net income of their corporation for the stockholders. That the officers were entitled to an increase is evident. We think, however, that the increase should be limited to $8,000 for each of the three sons and that the $9,000 paid to the father, T. H. McMillan, should be allowed.

ARUNDELL not participating.